**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JAMES MARINO,** *individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>-against-<br><br>**NATIONWIDE STUDIOS, INC. d/b/a LEGACY STUDIOS,**<br><br>Defendant. | Civil Case No.: 2:26-cv-00099-MEF-JRA<br><br>**CIVIL ACTION**<br><br>**SECOND AMENDED CLASS COMPLAINT and JURY TRIAL DEMAND** |

Plaintiff James Marino ("Plaintiff"), by and through undersigned counsel, brings this class action against Defendant Nationwide Studios, Inc. d/b/a Legacy Studios, ("Defendant" or "Legacy") and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1. This is a putative class action under the 47 U.S.C. § 227 *et seq*., the Telephone Consumer Protection Act ("TCPA"), arising from Defendant's systematic and repeated violations of the TCPA and its implementing regulations.

2. Plaintiff brings this action pursuant to 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c), which prohibit telephone solicitations to residential or cellular telephone numbers listed on the National Do Not Call ("DNC") Registry.

3. Despite Plaintiff's number being registered on the DNC, Defendant sent him multiple telephone solicitations, including SMS text messages. These solicitations were made without Plaintiff's prior express consent.

4. Plaintiff also brings this action under 47 C.F.R. § 64.1200(d), which requires telemarketers to maintain an internal do-not-call list and to honor individual do-not-contact requests.

5. Defendant violated this rule by repeatedly contacting Plaintiff after he clearly and unambiguously revoked any prior consent and requested no further communications. Defendant failed to maintain and honor an internal do-not-call list, as required.

6. Defendant also used an autodialer, or a system that functions as the equivalent of an ATDS, to send promotional messages to Plaintiff and the putative Class, without obtaining prior express written consent in violation of 47 U.S.C. § 227(b).

7. Defendant is a full-service photography studio that provides school, senior, and event portrait services.

8. To promote its services, Defendant sends autodialed telephone solicitations to clients.

9. On or about July 11, 2003, Plaintiff registered his cellular telephone number ending in 2447 with the National Do Not Call Registry.

10. Beginning in or around October 2025, Plaintiff received unsolicited telephone solicitations sent to his registered phone number from Defendant, despite having no prior relationship with Defendant and without providing any consent to receive such communications.

11. On numerous occasions, Plaintiff unequivocally communicated to Defendant that he did not wish to be contacted. Nonetheless, Plaintiff received additional automated telemarketing messages from Defendant.

12. Upon information and belief, by failing to honor do-not-call requests from both the National Do-Not-Call registry and after receiving requests for the communications to stop, Defendant has harmed hundreds, if not thousands, of consumers.

13. Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct, which has resulted in the ensuing invasion of privacy, aggravation and disruption of the daily life of countless individuals.

14. Plaintiff also seeks statutory damages on behalf of himself and Class Members, as defined below, and any other available legal or equitable remedies.

## PARTIES

15. Plaintiff is, and at all times relevant hereto was, an individual and a "person" as defined by 47 U.S.C. § 153(39), a citizen and resident of Amity Harbor, New York, and the sole and primary subscriber and user of the cellular telephone number ***-***-2447 (the "2447 Number").

16. Defendant is, and at all times relevant hereto was, a New Jersey limited liability company and a "person" as defined by 47 U.S.C. § 153(39) that maintains its primary place of business at 86 Roseville Road, Andover, New Jersey 07821.

## JURISDICTION, VENUE, AND STANDING

17. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the TCPA, a federal statute.

18. Defendant is subject to personal jurisdiction in New Jersey because it resides in the State, maintains its principal place of business in the State, and directed the conduct at issue from within the State.

19. Venue for this action is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District and a substantial portion of the wrongful conduct giving rise to this lawsuit took place within this judicial District.

20. Plaintiff has standing to maintain this action because Plaintiff suffered a legal injury as a result of Defendant's violations of the TCPA, and because he is not requesting an advisory opinion from this Court. Thus, Plaintiff has a sufficient stake in a justiciable controversy and seeks to obtain judicial resolution of that controversy.

## **STATUTORY BACKGROUND**

21. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

22. § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

23. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

24. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

25. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential or wireless telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

26. The TCPA and its implementing regulations also require that any person or entity engaging in telemarketing must maintain its own internal do-not-call list and must record and honor individual requests not to be contacted. 47 C.F.R. § 64.1200(d). These protections apply equally to calls and text messages made to wireless numbers.

27. In addition to the National and internal do-not-call protections, the TCPA prohibits any person from making calls to a cellular telephone number using an automatic telephone dialing system ("ATDS" or "autodialer") without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii). The term "call" includes text messages. FCC regulations and judicial interpretations have clarified that technologies that automatically send text messages from a stored list without human involvement may constitute an ATDS depending on the platform's capacity, as recognized in post-*Facebook v. Duguid* decisions. *See* In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; *Facebook, Inc. v. Duguid*, 592 U.S. 395, 403 (2021).

28. The FCC has further defined the standard of consent for autodialed marketing messages. "Prior express written consent" is required before a caller can lawfully place telemarketing calls or send text messages using an autodialer to a consumer's wireless number. Such consent must be in writing, must bear the signature of the person called, and must clearly authorize the seller to deliver advertisements or telemarketing messages using an autodialer or prerecorded voice. 47 C.F.R. § 64.1200(f)(9). The agreement must also include a clear and conspicuous disclosure informing the consumer that consent is not a condition of purchasing any goods or services.

29. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are

unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub. L. No. 102-243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, No. 11-C-5886, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

30. The Federal Communication Commission ("FCC") has made rulings regarding the TCPA's vicarious liability of telemarketing for calls placed by their agents. As early as 1995, the FCC stated that "[c]alls placed by an agent of the telemarketer are treated as if the telemarketer itself placed the call." See *In re Rules and Regulations Implementing the TCPA of 1991*, 10 FCC Rcd. 12391, 12397 ("The 1995 Ruling.")

**FACTUAL ALLEGATIONS**

31. Defendant owns and operates Legacy, a photography company that provides school, senior, and event portrait services to consumers nationwide.

32. To promote its services, Defendant engages in sending autodialed telemarketing calls to clients.

***NATIONAL DO NOT CALL REGISTRY VIOLATIONS***

33. On or about July 11, 2003, Plaintiff registered his cellular telephone number ending in 2447 with the National Do Not Call Registry.

34. Plaintiff's telephone number ending in –2447 has been registered on the National Do Not Call registry since before the conduct alleged herein.

35. Plaintiff is a residential telephone subscriber, and subscribed to this phone service for personal use and for residential use.

36. Plaintiff solely uses this phone number for personal residential use, and not for business use.

37. Plaintiff did not subscribe to this phone service for any business purpose and this phone service is not associated with any business.

38. Despite this registration, Defendant sent at least twenty-two (22) unsolicited telephone solicitations to Plaintiff's number between October 16, 2025, and December 19, 2025.

39. These communications were part of Defendant's standardized and recurring telemarketing campaign.

40. Upon information and belief, Defendant contacted numerous consumers whose numbers were listed on the National Do Not Call Registry in a similar fashion.

41. Defendant's failure to consult or adhere to the National Do Not Call Registry before initiating telephone solicitations violates 47 C.F.R. § 64.1200(c)(2).

***INTERNAL DO NOT CALL REGISTRY and AUTODIALED NO CONSENT***

42. Beginning in or around October 2025, Defendant began contacting Plaintiff through SMS messages for marketing purposes related to its photography services.

43. On October 16, 2025, Plaintiff received a telemarketing text message from Defendant which read:

> Get FREE SHIPPING on Charlone's school photo order - discount applied at checkout!
> Offer ends tomorrow. View photos at legacyphotos.shop. Use access code: 9fvrtf
> Text STOP to opt-out

44. Plaintiff did not wish to proceed further so he replied "STOP" to opt out, as instructed.

45. Despite this, on October 23, 2025, he received another telemarketing text message from Defendant, which read:

> Digital Photo Deal! Spend $40 and grab Charlone's digital photo for just $15 - just select the offer when it pops up during checkout. Offer ends tomorrow! View at legacyphotos.shop using access code: 9fvrtf
> Text STOP to opt-out

46. Plaintiff did not wish to proceed further so he, again, replied "STOP" to opt out, as instructed.

47. Despite this, on October 24, 2025, he received another telemarketing text message from Defendant, which read:

> LAST DAY! Spend $40, get Charlone's digital photo for $15 at checkout. View at legacyphotos.shop, access code: 9fvrtf
> Text STOP to opt-out

48. Plaintiff did not wish to proceed further so he, again, replied "STOP" to opt out, as instructed.

49. Despite this, Defendant continued to place telephone solicitations to Plaintiff's phone number.

50. Plaintiff continued receiving telemarketing text messages after Plaintiff unequivocally opted out on October 16, 2025, including on:

(a) October 23, 2025;

(b) October 24, 2025;

(c) October 29, 2025;

(d) November 6, 2025;

(e) November 7, 2025;

(f) November 14, 2025;

(g) November 18, 2025;

(h) November 18, 2025;

(i) November 21, 2025;

(j) November 21, 2025;

(k) November 25, 2025;

(l) November 25, 2025;

(m) November 29, 2025;

(n) December 5, 2025;

(o) December 10, 2025;

(p) December 10, 2025;

(q) December 17, 2025;

(r) December 18, 2025;

(s) December 18, 2025;

(t) December 19, 2025; and

(u) December 19, 2025.

51. Furthermore, Plaintiff specifically opted out of communication on: (a) October 16, 2025; (b) October 23, 2025; (c) October 24, 2025; (d) October 29, 2025; and (e) November 14, 2025.

52. Upon information and belief, Plaintiff did not make any agreement to be contacted or marketed to using automated text messaging by Defendant.

53. Defendant initiated the subject telephone solicitations from within this District, as its operations are headquartered in New Jersey.

54. The purpose of Defendant's telephone solicitations was to promote and solicit the services offered by Defendant.

55. Defendant's telephone solicitations were not made for an emergency purpose or to collect on a debt pursuant to 47 U.S.C. § 227(b)(1)(B).

56. Upon information and belief, at no point in time did Plaintiff provide Defendant with his express consent to be contacted.

57. To the extent that Defendant had any consent to contact Plaintiff, that consent was expressly revoked when Plaintiff told Defendant to "STOP" via text message on October 16, 2025.

58. To the extent that Defendant had any consent to contact Plaintiff, that consent was expressly revoked when Plaintiff opted out of communication through text messages on: (a) October 16, 2025; (b) October 23, 2025; (c) October 24, 2025; (d) October 29, 2025; and (e) November 14, 2025.

59. Upon information and belief, Defendant caused similar telephone solicitations to be sent to other individuals residing within this judicial District and nationwide.

60. Automated telephone solicitations, such as the ones made by Defendant, are subject to the TCPA. *See* Fed. Commc'ns Comm., Enforcement Advisory No. 2016-06, DA 16-1299, *Robotext Consumer Protection: Text Message Senders Must Comply With the Telephone Consumer Protection Act* (Nov. 18, 2016).

61. Under FCC guidance and well-settled case law, text messages constitute "calls" within the meaning of the TCPA. See *Gager v. Dell Fin. Services, LLC*, 727 F.3d 265, 269 (3d Cir. 2013).

62. 47 C.F.R. § 64.1200(d) requires that a company implement certain minimum policies and procedures prior to making telemarketing calls.

63. These policies and procedures include maintaining a written policy, available upon demand, for maintaining a do-not-call list; training personnel engaged in telemarketing; and recording and honoring do-not-call requests when made.

64. Upon information and belief, Defendant does not have a written policy for maintaining an internal do-not-call list pursuant to 47 C.F.R. § 64.1200(d)(1).

65. Upon information and belief, Defendant does not inform and train its personnel engaged in telemarketing in the existence and the use of any internal do-not-call list pursuant to 47 C.F.R. § 64.1200(d)(2).

66. Upon information and belief, Defendant fails to honor do-not-call requests – including as evidenced by the continued telephone solicitations to Plaintiff after he directly asked Defendant not to be contacted.

67. Upon information and belief, the telephone solicitations originated from a number owned, controlled, or operated by Defendant or on behalf of Defendant because the messages clearly reference Legacy Studios, describe services that correspond to those offered by Defendant, and include links to Defendant's website.

68. Plaintiff and the Class members have suffered concrete harm because of Defendant's unwanted and unsolicited communication, including, but not limited to:

- Device storage limitations;
- Data usage;
- Lost time tending to and responding to the unsolicited text messages;
- Invasion of Privacy;
- Intrusion upon Seclusion;
- Nuisance,
- Aggravation; and
- Annoyance.

69. Defendant's telephone solicitations also inconvenienced Plaintiff and caused disruption to his daily life.

70. These forms of injury are sufficient for Article III standing purposes.

71. Defendant directly initiated the unlawful communication to Plaintiff and the other Class members and is directly liable for violating the TCPA.

## CLASS ALLEGATIONS

**PROPOSED CLASSES**

72. Plaintiff brings this action pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of all other similarly situated persons as a class action. The Class and sub-classes (together "Classes") that Plaintiff seeks to represent are comprised of and defined as:

> **Autodialed No Consent Class: All persons within the United States who, within the four years prior to the filing of this Complaint, were sent one or more telephone solicitation from Defendant or anyone on Defendant's behalf using an automatic telephone dialing system, without prior express written consent.**
>
> **National Do Not Call Registry Subclass: All persons within the United States who, within the four years prior to the filing of this Complaint, were sent more than one telephone solicitation within a 12-month period by or on behalf of Defendant, to a residential or cellular telephone number that was registered on the National Do Not Call Registry for at least 31 days prior to the first message.**
>
> **Internal Do Not Call Subclass: All persons within the United States who, within the four years prior to the filing of this Complaint, were sent more than one telephone solicitation within a 12-month period from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number *after* making a communication indicating they wished to stop contact and who are likely to be subject to future similar conduct.**

73. Defendant and its employees or agents are excluded from the Classes. Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

74. Plaintiff does not know the number of members in the Classes but believes the members of the Classes number in the several thousands, if not more.

**NUMEROSITY**

75. Upon information and belief, Defendant has placed violative calls to cellular telephone numbers belonging to thousands of consumers throughout the United States after they had revoked consent to be contacted. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

76. The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery and a review of Defendant's records. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**COMMONALITY**

77. There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Classes. Among the questions of law and fact common to the Classes are:

i. Whether Defendant violated 47 C.F.R. § 64.1200(d);

ii. Whether Defendant violated 47 C.F.R. § 64.1200(a)(2);

iii. Whether Defendant violated 47 C.F.R. § 64.1200(f)(9);

iv. Whether Defendant's conduct was knowing and willful;

v. Whether Defendant adhered to requests by class members to stop sending telephone solicitations to their telephone numbers;

vi. Whether Defendant keeps records of text and call recipients who revoked consent to receive texts and/or calls;

vii. Whether Defendant has any written policies for maintaining an internal do not call list;

viii. Whether Defendant violated the privacy rights of Plaintiff and members of the classes;

ix. Whether Defendant is liable for damages, and the amount of such damages; and

x. Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

78. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits telephone solicitations to telephone numbers assigned to cellular telephone services after the consumer has opted out of further communication is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

79. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories. Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Classes.

**ADEQUACY**

80. Plaintiff is a representative who willfully and adequately asserts and protects the interests of the Classes and has retained competent counsel experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

**SUPERIORITY**

81. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the thousands or millions of dollars, the individual damages incurred by each member of the Classes resulting from Defendant's wrongful conduct are too small to warrant the

expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

82. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Classes, although certain class members are not parties to such actions.

83. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

**COUNT I**

**Violations of the TCPA, 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)**
*Individually and on Behalf of the National Do Not Call Registry Subclass*

84. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

85. Pursuant to 47 U.S.C. §227(c), the Federal Communications Commission ("FCC") was directed to issue regulations to protect residential and wireless telephone subscribers' privacy rights to avoid receiving unwanted telephone solicitations.

86. Under 47 C.F.R. § 64.1200(c)(2), a person or entity must not initiate any telephone solicitation to a residential or wireless telephone subscriber who has registered their number on the National Do Not Call Registry for at least thirty (30) days.

87. Plaintiff's telephone number was listed on the National Do Not Call Registry well prior to any of Defendant's telephone solicitations alleged herein.

88. Despite this registration, Defendant sent more than one telephone solicitation to Plaintiff's number within a 12-month period.

89. These solicitations were not sent in error, nor were they isolated events. Rather, they were part of a repetitive and ongoing telemarketing campaign conducted by or on behalf of Defendant.

90. Defendant failed to consult the National Do Not Call Registry prior to initiating these solicitations, and failed to implement any reasonable procedures to ensure compliance with the TCPA's national DNC requirements.

91. Defendant's conduct violated 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) because Plaintiff and other members of the National Do Not Call Registry Subclass received more than one telephone solicitation within a 12-month period, despite their numbers being listed on the Registry for at least thirty days.

92. As a result of Defendant's conduct, Plaintiff and the National Do Not Call Registry Subclass suffered invasions of privacy and are entitled to an award of statutory damages.

93. For each unlawful telephone solicitation sent to Plaintiff and members of the National Do Not Call Registry Subclass in violation of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2), Plaintiff and Class members are entitled to recover their actual monetary loss or up to $500 in statutory damages per violation, whichever is greater.

94. If the Court finds that Defendant's violations were knowing or willful, Plaintiff and Class members are entitled to treble damages of up to $1,500 per violation, pursuant to 47 U.S.C. § 227(c)(5).

95. Plaintiff and the Subclass members are also entitled to seek injunctive relief prohibiting Defendant from sending further telephone solicitations to numbers registered on the National Do Not Call Registry, pursuant to 47 U.S.C. § 227(c)(5).

## COUNT II

**<u>Violations of the TCPA, 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)</u>**

*Individually and on Behalf of the Internal Do Not Call Subclass*

96. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

97. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

98. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate… any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d)(3), (6).

99. Under 47 C.F.R § 64.1200(e) the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers:

> (e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.

47 C.F.R. § 64.1200(e).

100. Plaintiff and the Internal Do Not Call Subclass members made requests to Defendant not to receive telemarketing solicitations from Defendant.

101. Defendant failed to honor Plaintiff and the Internal Do Not Call Subclass members' requests.

102. Any prior consent to receive communications from Defendant was revoked by Plaintiff's and the Internal Do Not Call Subclass members' opt-out request(s), which Defendant ignored, in violation of 47 C.F.R. § 64.1200(d).

103. Upon information and belief, Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on their behalf, pursuant to 47 C.F.R. § 64.1200(d).

104. Because Plaintiff and the Internal Do Not Call Subclass members received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

105. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and the Internal Do Not Call Subclass members are entitled to an award of actual monetary loss or up to $500.00 in statutory damages per violation, whichever is greater, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5).

106. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and the Internal Do Not Call Subclass members are entitled to treble damages of up to $1,500.00 per violation, for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5).

107. Plaintiff and the Internal Do Not Call Subclass members also suffered damages in the form of invasion of privacy.

108. Plaintiff and the Internal Do Not Call Subclass members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5).

**COUNT III**

**Violations of the TCPA, 47 U.S.C. § 227(b) & 47 C.F.R. 64.1200(a)(2) & (f)(9)**

*Individually and on Behalf of the Autodialed No Consent Class*

109. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

110. Defendant and/or its agent sent multiple telephone solicitations to Plaintiff's and Class members' cellular telephone numbers using an automatic telephone dialing system ("autodialer") as defined by the TCPA, 47 U.S.C. § 227(a)(1), or using a dialing system that automatically transmitted messages from a stored list without human intervention, which courts

have held may qualify as an ATDS post-*Facebook v. Duguid*, depending on the system's functionality.

111. Plaintiff and Class Members never provided Defendant with prior express written consent as required by 47 C.F.R. § 64.1200(a)(2) and (f)(9).

112. Even if Plaintiff or class members had previously provided consent, such consent was revoked by Plaintiff's October 16, 2025, opt-out request, making Defendant's subsequent autodialed messages unlawful.

113. Defendant's autodialed messages were telemarketing in nature and were sent for the purpose of promoting its photography-related goods and services.

114. Defendant's use of autodialing technology to contact consumers without prior express written consent constitutes a clear violation of 47 U.S.C. § 227(b)(1)(A)(iii).

115. As a result of Defendant's violations, Plaintiff and Class members are entitled to an award of $500 in statutory damages per violation pursuant to 47 U.S.C. § 227(b)(3)(B).

116. If the Court finds Defendant's conduct was willful or knowing, Plaintiff and the Class are entitled to an award of up to $1,500 per violation pursuant to 47 U.S.C. § 227(b)(3).

117. Plaintiff and Class members seek injunctive relief prohibiting Defendant from using autodialers or similar equipment to send unsolicited text messages without prior express written consent in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class, prays for the following relief:

i. An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Marcus & Zelman, LLC as Class Counsel;

ii. An award of actual and statutory damages for each and every negligent violation to each member of the Class, Do Not Call Registry Subclass, and Internal Do Not Call Subclass pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(c)(5);

iii. An award of treble actual or statutory damages for each and every knowing and/or willful violation to each member of the Class, Do Not Call Registry Subclass, and Internal Do Not Call Subclass pursuant to 47 U.S.C § 227(b)(3) and 47 U.S.C. § 227(c)(5);

iv. An order declaring that Defendant's actions, set out above, violate the TCPA;

v. An injunction requiring Defendant to cease all unsolicited text messaging and calling activity, and to otherwise protect the interests of the Classes;

vi. Pre-judgment and post-judgment interest on monetary relief; and

vii. Such further and other relief as the Court deems necessary.

**JURY DEMAND**

Plaintiff, individually and on behalf of the Classes, hereby demands a trial by jury.

**DOCUMENT PRESERVATION DEMAND**

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemizations associated with the allegations herein, including all records, lists, electronic databases or other itemizations in the possession of any vendors, individuals, and/or companies contracted, hired, or directed by Defendant to assist in sending the alleged communications.

Dated: April 20, 2026

/s/ Yitzchak Zelman
Yitzchak Zelman, Esq.
MARCUS & ZELMAN, LLC
701 Cookman Avenue, Suite 300

Ashbury Park, NJ 07712
Tel: (732) 695-3282
Email: yzelman@marcuszelman.com
Attorneys for Plaintiff